IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOY L. MARTINEZ, individually, as personal representative
of LOUIS J. MARTINEZ, deceased, and as mother and next
friend of KEVIN JOSEPH MARTINEZ, a minor, and
MARIAH NICOLE MARTINEZ, a minor,

    Plaintiff,

    vs.        No. CIV 99-0033 JC/DJS

CO2 SERVICES, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Defendant's Motion for Summary Judgment, filed August 31, 1999 *(Doc. 25)*; Plaintiff's Motion for Oral Argument, filed August 31, 1999 *(Doc. 28)*; Defendant CO2 Services, Inc.'s Motion for Summary Judgment on Count I, filed May 15, 2000 *(Doc. 81)*; Defendant CO2 Services, Inc.'s Motion for Summary Judgment on Count III, filed May 15, 2000 *(Doc. 73)*; Defendant CO2 Services, Inc.'s Motion for Summary Judgment on Count IV, filed May 8, 2000 *(Doc. 64)*; and Defendant CO2 Services, Inc.'s Motion for Summary Judgment on Count V, filed May 8, 2000 *(Doc. 59)*. After reviewing the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities, the Court finds that oral argument is unnecessary and therefore, Plaintiff's Motion for Oral Argument will be denied. The Court also finds that Defendant's Motions for Summary Judgment are well taken and will be granted. Finally, all other outstanding motions will be denied as moot.

**I.**     **Background**

Louis J. Martinez was a New Mexico State Highway and Transportation Department employee working alongside Interstate 40 near Tramway Boulevard in Albuquerque on

November 4, 1998. This portion of the Interstate was under construction, as indicated by orange barrels and other warning devices, and traffic was restricted to the right-hand lane of the three-lane road. Donald Dewaine Mullins, an employee of Defendant CO2 Services, Inc., was driving a semi-tractor trailer owned by Defendant. As Mr. Mullins passed through the construction area, he lost control of the semi and crossed into the emergency lane. Mr. Mullins proceeded through the warning devices and struck the jersey bounce, hitting Mr. Martinez before the vehicle came to a stop. Upon arriving at the semi-tractor trailer, rescue personnel discovered Mr. Mullins lying dead across the bench of the truck. An autopsy determined the cause of Mr. Mullins' death to be ventricular fibrillation, or cardiac arrest. It is undisputed that neither Mr. Mullins nor his physicians knew of his heart condition. Mr. Martinez died seven days later as a result of injuries suffered as a result of the accident. Plaintiff Joy L. Martinez now sues on behalf of herself and her children to recover for the wrongful death of her husband.

With permission from the Court, Plaintiff filed a First Amended Complaint (FAC) on October 12, 1999 *(Doc. 36)*. In the FAC, Plaintiff alleges that Defendant is vicariously liable for Mr. Mullins' negligent driving and failure to stay awake while driving. In addition, Plaintiff claims that Defendant knew or should have known that Mr. Mullins suffered from a sleeping condition and is therefore liable for negligently hiring Mr. Mullins and negligently entrusting Mr. Mullins with a company vehicle. Finally, Plaintiff asserts that Defendant is vicariously liable for Mr. Mullins' failure to wear a seatbelt.

Presently before the Court are a number of summary judgment motions. Initially, Defendant filed a motion for summary judgment based on Plaintiff's original complaint. *See* Defendant's Mot. for Summ. J., filed Aug. 31, 1999 *(Doc. 25)* After the FAC was filed, Defendant brought a separate motion for summary judgment on each count of the FAC, reiterating the arguments put forth in the

original motion for summary judgment.  *See* Defendant's Mots. for Summ. J. *(Docs. 59, 64, 73 and 81)*.

## II.     Analysis

### A.     Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The Federal Rules of Civil Procedure provide that it is the movant's burden to demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986).  A "material" fact is one "that might affect the outcome of the suit under the governing law," and a "genuine" issue is one for which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Once the movant has made such a showing, the adverse party "may not rest upon the mere allegations or denials of [their] pleading[s], [they] must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).

In reviewing a summary judgment motion, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, even when it is produced by the moving party."  *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir. 1995).  "Summary judgment is only appropriate if 'there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996) (quoting *Anderson*, 477 U.S. at 249).  "Thus, to defeat a summary judgment motion, the non-movant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)).  If the evidence

is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 at 249-250 (citations omitted).

When, as here, a federal court sits in diversity, it must apply the substantive law of the state in which it sits in order to determine the sufficiency of the evidence. *See Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1119 (10th Cir. 1999); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  Where the New Mexico Supreme Court has not addressed an issue, this Court must anticipate how that court would rule and hold accordingly.  *Adams-Arapahoe Sch. Dist. No. 28-J v. GAF Corp.*, 959 F.2d 868, 871 (10th Cir. 1992); *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir.1984).  In so predicting, the Court will consider "state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988).  Conversely, a federal court sitting in diversity applies its own procedural law.  *See Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999).

### B. Negligence Claims

Plaintiff first alleges that Mr. Mullins' failure to control his vehicle constitutes negligence and that Defendant is vicariously liable for Mr. Mullins actions. *See* FAC at 3.  Defendant, on the other hand, argues that Mr. Mullins' loss of control was not a result of negligence, but of his sudden unforeseen cardiac death.

In order to prove that Defendant is vicariously liable for the wrongful death of Mr. Martinez, Plaintiff must first show that Mr. Mullins negligently operated Defendant's vehicle.  Then Plaintiff can proceed to demonstrate that Defendant is vicariously liable for any injury caused by Mr. Mullins' acts.  In order to prove negligence, the elements of a prima facie case must be met.  The elements of negligence are duty, breach of duty, proximate cause, and damages.  *See Tafoya v. Seay Bros. Corp.*,

119 N.M. 350, 352, 890 P.2d 803, 805 (1995). "'Proximate cause' is that which in a natural and continuous sequence . . . produces the injury and without which [the] injury would not have occurred.'" *Id.* (quoting *Lopez v. Maez*, 98 N.M. 625, 631, 651 P.2d 1269, 1275 (1982)).

Plaintiff first sets forth the theory of *res ipsa loquitur* to establish Mr. Mullins' negligence. *Res ipsa loquitur*, a Latin phrase, meaning the thing speaks for itself, is simply a method of proving negligence through circumstantial evidence.[1] It provides for an inference of culpability under certain circumstances and allows a plaintiff to make a prima facie showing with regard to specific acts of negligence. *See Romero v. Truchas Mut. Domestic Water Consumer & Mut. Sewage Works Ass'n*, 121 N.M. 71, 908 P. 2d 764, *cert. denied*, 120 N.M. 828, 907 P.2d 1009 (1995) (overruled on other grounds). The doctrine describes a set of conditions to be met before an inference of negligence may be drawn. *See Mireles v. Broderick*, 117 N.M. 445, 448, 872 P.2d 863, 866 (1994). Generally, application of the doctrine permits the jury to infer negligence on the part of a defendant, where the ability to prove or disprove negligence lies with the defendant. *Mireles*, 117 N.M. at 448, 872 P.2d at 866. However, while the doctrine "relieves a plaintiff from the burden of producing direct evidence of negligence, it does not relieve [the plaintiff] from the burden of proof that the defendant was at fault. . . ." *Romero*, 121 N.M. 71, 75, 908 P. 2d 764, 768.

Relying on *res ipsa loquitur*, Plaintiff argues that an automobile accident is not an event that happens absent some sort of negligence. Thus, Plaintiff contends, in the absence of some other explanation, negligence may be inferred from the mere fact that an accident occurred. However, for

---

[1] Effective August 1, 1999, "what was previously labeled *res ipsa loquitur* has been retitled 'circumstantial evidence of negligence'" in order to eliminate "arcane, magic and 'sacred' language." UJI 13-118, 13-1623 NMRA (2000). However, the terms share the same meaning and thus are referred to interchangeably. *See id.* (*Res ipsa* is a rule of circumstantial negligence and therefore has been characterized as such).

Listed separately, Count Two asserts a claim of *res ipsa loquitur* or circumstantial evidence of negligence. *Res ipsa loquitur,* however, is not a tort. Therefore, Count Two will not be addressed separately, but rather, when applicable to Plaintiff's other claims, circumstantial evidence of negligence will be considered.

*res ipsa loquitur* to apply, there must be facts that lead to a reasonable and logical inference that the defendant was negligent. *See Drake v. Trujillo*, 122 N.M. 374, 379, 924 P.2d 1386, 1391 (Ct. App. 1996). The course of events may be established by expert testimony, lay evidence, or common knowledge. *See Mireles*, 117 N.M. at 448, 872 P.2d at 866. Yet here, the very facts upon which Plaintiff bases her argument serve just as well for either side. The day was clear, the roadway was straight and level and views were unobstructed. Warning devices and barricades were properly placed (indicating construction), and traffic was traveling at a reduced speed. The evidence also indicates that Mullins was traveling at about 25 miles per hour and appeared to be following the construction signs as indicated by his presence in the far right-hand lane just prior to the accident. While Plaintiff argues that there was no explanation for Mr. Mullins' subsequent loss of control other than negligence, Defendant's assertion that Mr. Mullins went into cardiac arrest is equally compelling, especially given the autopsy report which indicates that the cause of Mr. Mullins' death was cardiac arrest. *See* Autopsy Report, attached as Ex. 12 to Def.'s Mot. for Summ. J. *(Doc. 24)*. Thus, the mere fact that an accident occurred is not sufficient grounds for concluding that Defendant was probably negligent. *See Drake*, 122 N.M. at 379, 924 P.2d at 1391; *Martinez v. Teague*, 96 N.M. 446, 449, 631 P.2d 1314, 1317 (Ct.App.1981).

Plaintiff also alleges that Mr. Mullins could have negligently fallen asleep while driving, whereupon his heart entered ventricular fibrillation due to lack of oxygen. Plaintiff argues that Mr. Mullins suffered from "sleep apnea." Apnea is defined as "[c]essation of inspiratory airflow for ten seconds or longer." Pl.'s Resp. to Def.'s Mot. for Summ. J. at Ex. C at RMAP -0042 *(Doc. 26)*. Because apnea occurs during sleep, it can disrupt restfulness during the night resulting in extreme drowsiness during the day. In support of her claim, Plaintiff has provided medical records and questionnaires indicating that Mr. Mullins knew that he suffered from sleep apnea. *See id*; *see also*

Pl.'s Resp. to Def.'s Mot. for Summ. J. on Count III of FAC, filed May 15, 1999 *(Doc. 75)*. In addition, Plaintiff has presented the affidavits of two expert witnesses who opine that "it is impossible to tell whether ventricular fibrillation occurred before or after Mullins truck crossed the highway and collided with Mr. Martinez" and "[t]he circumstances appear to suggest at least the likelihood that the patient may have fallen asleep at the wheel to explain the movements of the truck at the accident scene." *See* Affidavits of Dr. Barry Ramo and Dr. Richard Seligman, attached as Exs. A and B to Pl.'s Resp. to Def.'s Mot. for Summ. J. on Count III *(Doc. 75)*. The essence of Plaintiff's claims are that Mr. Mullins, knowing he suffered from sleep apnea failed to wear a treatment device while sleeping and then negligently fell asleep at the wheel of his truck. *See* FAC at 6.

In this case, the doctors' opinions that the accident could have resulted from Mr. Mullins having fallen asleep are based on a number of assumptions which Plaintiff is unable to establish through anything other than speculation. *See* Dep. of Dr. Barry Ramo, attached as Ex. D to Pl.'s Resp. to Def.'s Mot. for Summ. J. on Count I, filed May 15, 2000 *(Doc. 83)*. However, a plaintiff is not permitted to rest on mere allegations. *See Celotex*, 477 U.S. at 324. By Plaintiffs' own admission, it is impossible to tell whether Mr. Mullins fell asleep at all, or whether Mr. Mullins suffered ventricular fibrillation before or after the accident. While questions of fact are generally left for the jury to decide, summary judgment is appropriate where, as in this case, "there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996) (quoting *Anderson*, 477 U.S. 242, 249). Therefore, although there remains a genuine issue of material fact, Plaintiff has presented insufficient evidence to support a verdict and summary judgment will be granted on Plaintiff's claims of negligence in Counts I and III.

### C. Negligent Entrustment/Hiring

Plaintiff also asserts that Defendant acted negligently in hiring Mr. Mullins and entrusting him with the operation of a commercial vehicle because Defendant knew or should have known that Mr. Mullins suffered from sleep apnea. *See* Plaintiff's FAC at 7.

Section 308 of the Second Restatement of Torts sets forth a general description of negligent entrustment. It states:

> It is negligence to permit a third person to use a thing or engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use such a thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

RESTATEMENT (SECOND) OF TORTS § 308, at 100 (1965). New Mexico courts have explicitly recognized the theory of negligent entrustment in regard to automobile cases. *See Gabaldon v. Erisa Mortgage Co.*, 1997- NMCA-120, 124 N.M. 296, 306 (applying negligent entrustment theory to real estate for the first time). In *McCarson v. Foreman*, the New Mexico Court of Appeals held that "general principles of negligence are relevant to the determination of negligent entrustment." 102 N.M. 151, 155-56, 692 P.2d 537, 541-42 (Ct. App. 1984). Therefore, in order to prove that Defendant negligently entrusted a company vehicle to Mr. Mullins, plaintiff must show that 1) Defendant entrusted Mr. Mullins with the vehicle, 2) Defendant either knew or should have known that Mr. Mullins was at risk for falling asleep while driving, and 3) that Mr. Mullins fell asleep, causing the accident. *See DeMatteo v. Simon*, 112 N.M. 112, 114, 812 P.2d 361, 363 (Ct. App. 1991).

However, Plaintiff is again hampered by her inability to demonstrate that Mr. Mullins in fact fell asleep. Plaintiff has the burden of demonstrating proximate cause between the entrustment and the injury. *See Gabaldon at 307.* Therefore, Plaintiff must establish that the disorder was the cause of the accident and resulting death of Mr. Martinez in order to prove Defendant is liable under the

theory of negligent entrustment. While Plaintiff's evidence relies heavily on the opinions of Dr. Ramo and Dr. Seligman, their opinions are nothing more than an educated guess to explain the events that took place on November 8, 1998. Taking the evidence in the light most favorable to Plaintiff, the mere possibility that Mr. Mullins fell asleep, without more, is insufficient to establish causation, a crucial element in all negligence cases. Anything is possible, and Plaintiff is not entitled to ask a jury to assess damages on that basis alone. A party is entitled to summary judgment if, after adequate time for discovery, there is a complete failure of proof on an issue that the non-moving party will bear the burden of proving at trial. *See Celotex*, 477 U.S. 317, 321. Consequently, assuming without finding that Defendant CO2 knew or should have known about Mr. Mullins' sleep condition and entrusted Mr. Mullins with a vehicle regardless, Plaintiff has failed to provide sufficient evidence to establish that Mr. Mullins' condition was the cause of the accident.

Like the theory of negligent entrustment, an individual or entity may be held liable in tort for the negligent hiring of an employee even though it is not responsible for the wrongful acts of the employee. *See Los Ranchitos v. Tierra Grande, Inc.*, 116 N.M. 222, 228, 861 P.2d 263, 269 (Ct. App. 1993). Liability for negligent hiring "flows from a direct duty running from the employer to those members of the public whom the employer might reasonably anticipate would be placed in a position of risk of injury as a result of the hiring." *Medina v. Graham's Cowboys Inc.*, 113 N.M. 471, 473, 827 P.2d 859, 861 (Ct. App. 1992) (quoting *Valdez v. Warner*, 106 N.M. 305, 307, 742 P.2d 517, 519(Ct. App. 1987)). Thus, for an employer to be liable for negligent hiring and retention, there must first be a connection between the employer's business and the injured plaintiff. *See Valdez,* 106 N.M. at 307, 742 P.2d at 519. In addition, Plaintiff must be able to show that "there was evidence the employee was unfit, considering the nature of the employment and the risk he posed to those with whom he would foreseeably associate and that the employer knew or should have known

that the employee was unfit." *Id*. Finally, the hiring of the employee must have been the proximate cause of the injury to Plaintiff. *See id.*

Again, the pivotal question is whether Plaintiff can demonstrate sufficient evidence to support her contention that Mr. Mullins' alleged sleep disorder was the proximate cause of her husband's death. There is a long established rule in New Mexico that negligence and causal connection are ordinarily a fact for the jury. *See F & T Co. v. Woods,* 92 N.M. 697, 700, 594 P.2d 745, 748 (1979). However, if Plaintiff fails to introduce sufficient evidence to reach a jury on the matter of causation, then the issue is a matter of law to be resolved by the judge. *See Celotex*, 477 U.S. at 322-23 (a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial, and the moving party is entitled to a judgment as a matter of law). If, as Plaintiff contends, the accident occurred as a result of Mr. Mullins having fallen asleep, then the issue is whether Defendant CO2 knew or should have known that Mr. Mullins was unfit for the position because of a sleeping disorder. However, if the accident is the result of Mr. Mullins unforeseeable heart condition, Defendant is not liable for negligent hiring

In this case, Plaintiff has failed to set forth sufficient evidence to support a finding that the cause of the accident was Mr. Mullins' failure to stay awake. Taking the evidence in the light most favorable to the Plaintiff, Plaintiff is left with Dr. Ramo's and Dr. Seligman's opinions that sleep deprivation could possibly have contributed to Mr. Mullins' loss of control of the semi and cardiac arrest. As Plaintiff has failed to set forth evidence of a causal link between Mr. Mullins' alleged sleep apnea and Mr. Martinez's death sufficient to support a verdict of negligent entrustment or hiring, Defendant's motions for summary judgement on Count IV and V will be granted.

**D.     Seatbelt Claim**

Plaintiff's Count V is based on the allegation that Mr. Mullins committed a specific act of negligence in failing to use his seatbelt while driving, and therefore Defendant is vicariously liable for Mr. Martinez's death.  Plaintiff argues that Mr. Mullins failed to wear his seatbelt in violation of a Federal Department of Transportation regulation intended to protect other drivers which requires all commercial drivers to wear a seatbelt while the vehicle is in operation.  *See* 49 C.F.R. § 392.16 (a commercial motor vehicle which has a seatbelt assembly installed at the driver's seat shall not be driven unless the driver has properly restrained himself/herself with the seatbelt assembly).  Plaintiff claims that Mr. Mullins' failure to use his seatbelt caused or contributed to the fact that the vehicle he was driving swerved, striking Mr. Martinez, resulting in Mr. Martinez' death.

Whether a defendant owes a plaintiff a legal duty is a question of law.  *See Calkins v. Cox Estates*, 110 N.M. 59, 62, 792 P.2d 36, 39 (1990).  The language of 49 C.F.R § 392.16 indicates the regulation is intended to protect the driver of a commercial vehicle by imposing a safety requirement that the driver wear a seatbelt when one is available.  However, the court finds no evidence that the regulation was created to protect other drivers.  Nevertheless, I need not decide whether the regulation imposed a duty upon Mr. Mullins toward Mr. Martinez, because I find that Plaintiff has failed to meet her burden in demonstrating that the failure to wear a seatbelt was a proximate cause of Mr. Martinez's fatal injuries.

Plaintiff bears the burden of showing that Mr. Martinez's death would not have occurred if Mr. Mullins had been wearing his seatbelt.  In other words, to find Defendant liable for negligent failure to wear a seatbelt, Plaintiff must connect Mr. Mullins' act to the devastating injuries suffered by Mr. Martinez.  Here, Plaintiff is unable to provide sufficient evidence to establish that the injury would not have occurred but for the failure to wear a seatbelt.

Plaintiff alleges that were Mr. Mullins wearing his seatbelt, he may have maintained control of his vehicle long enough to avoid the impact with Mr. Martinez.  *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. at 23 *(Doc. 26)*.  In the alternative, Plaintiff alleges that Mr. Mullins fell against the steering wheel and caused the vehicle to veer to the left into the construction zone where Mr. Martinez was hit.  *See id., see also* Pl.'s Resp. to Def.'s Mot. for Summ. J. on Count V, filed May 8, 2000 *(Doc. 61)*.  However, Plaintiff can provide no evidence to support either hypothesis.  No witnesses observed Mr. Mullins behind the wheel of the truck before it struck Mr. Martinez.  The first person to approach Mr. Mullins found him slumped across the bench of the cab.  There is no way to tell whether Mr. Mullins landed that way as a result of the impact with the jersey bounce, or whether it was the direction he fell upon losing consciousness.  Furthermore, Defendant presents evidence that given the low traveling speed of the semi, even if Mr. Mullins was wearing a seatbelt it would not have engaged.  Likewise, there is not enough evidence to support a finding of negligence under the doctrine of *res ipsa loquitur.*  Contrary to Plaintiff's allegations, there are a number of reasonable inferences which could explain why the semi veered off course once Mr. Mullins lost consciousness.  For example, the truck could have hit an impediment in the road, the truck could have been out of alignment, or Mr. Mullins could have suffered from an involuntary movement prior to his loss of consciousness which caused him to actually steer the truck off course.

The summary judgment standard takes the evidence in the light most favorable to the nonmoving party.  However, in this case, Plaintiff offers no evidence at all.  Plaintiff cannot rest on mere allegations. A  party is entitled to summary judgment if there is a complete failure of proof on a material issue.  *See Celotex*, 477 U.S. 317, 322-23.  Unfortunately, without any evidence, no reasonable jury could find by the preponderance of the evidence that the accident could have been avoided or injuries lessened if Mr. Mullins had been wearing his seatbelt.  To reiterate the standard,

"the non-movant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996). Plaintiff has failed to do just that. Therefore, summary judgment for Defendant will also be granted on Plaintiff's claim of negligence for failure to use a seatbelt.

### III. Conclusion

This is truly a tragic case. The facts are such that we may never know what happened to Dewaine Mullins in the last moments of his life, resulting in the loss of both his life and the life of Louis Martinez. However, the mere fact that an accident occurred does not create liability. Because Plaintiff lacks evidence sufficient to overcome a motion for summary judgment, her claims must be dismissed.

Wherefore,

IT IS ORDERED that Plaintiff's Motion for Oral Argument, filed August 31, 1999 *(Doc. 28)* is **denied**.

IT IS FURTHER ORDERED that Defendant's Motions for Summary Judgment *(Docs. 25, 59, 64, 73 and 81)* be, and hereby are, **granted**.

IT IS FINALLY ORDERED that all other outstanding motions are **denied as moot**.

DATED this 21st day of June, 2000.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | Norman S. Thayer<br>Sutin, Thayer & Browne<br>Albuquerque, New Mexico |
| Counsel for Defendant: | Lawrence H. Hill<br>Sandy H. Knight<br>Civerolo, Gralow & Hill, P. A.<br>Albuquerque, New Mexico |